MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone:   (520) 624-8886
Fax:    (520) 798-1037
Email: ecfbk@mcrazlaw.com
        mmcgrath@mcrazlaw.com
        irothschild@mcrazlaw.com

By:    Michael McGrath, # 6019
        Isaac D. Rothschild, # 25726
        60058-2/klw

Attorneys for Receiver Christopher G. Linscott

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceeding |
| NORD RESOURCES CORPORATION, | No.  4:15-bk-13197-SHG |
| Debtor. | **EMERGENCY MOTION TO DISMISS, MODIFY STAY, ABSTAIN OR SUSPEND** |

Christopher G. Linscott, the court-appointed receiver ("Receiver") for the assets of Nord Resources Corporation ("Nord" or "Debtor"), respectfully requests that the Court enter an order under 11 U.S.C. §§ 105, 1104 (a) and 1112(b)(1) dismissing this bankruptcy case for a bad faith unauthorized filing or in the alternative, the Court should exercise its discretion and abstain, dismiss, or suspend the bankruptcy case pursuant to 11 U.S.C. §305.

At 9:30a.m today, October 15, 2015, a duly noticed hearing took place to authorize the Receiver to sell the assets of Nord, an operating copper mine.  No objections to the sale were filed.  At 9:30a.m., Pima County Superior Court Judge Sarah Simmons informed the parties present at the hearing that she had just received notice of a bankruptcy petition for

Nord (the "Bankruptcy Petition"). The Bankruptcy Petition was signed by a party without authority and was a bad faith attempt to avoid or delay the regularly scheduled sale. This delay in the sales process has created havoc for the funding of mine operations and for the employees, vendors, and parties contractually related to Nord.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Nord is an operating copper mine in Cochise County, Arizona. On November 18, 2014, the Receiver was appointed at the request of Nedbank Ltd. ("Nedbank") to be receiver of the assets of Nord, as reflected in the Pima County Superior Court's (the "State Court") November 18, 2014 "Order Appointing Receiver "(the "Receivership Order"), attached hereto and incorporated herein as *Exhibit A*. The Receivership Order was entered with the express consent of Nord, as evidenced by the "Notice of Consent of Nord Resources Corporation to Entry of Order Appointing Receiver" filed November 19, 2014, attached hereto and incorporated herein as *Exhibit B*.

The Receivership Order provides that

> the Receiver shall have the power and authority to file a chapter 7 or 11 bankruptcy petition. Such right to file a chapter 7 or 11 shall be the exclusive right of the Receiver. Defendant [Nord] hereby grants such exclusive authority and right to the Receiver.

*Exhibit A*, Page 14, ll. 12-14. On April 20, 2015, the Receiver filed a Motion to Approve Sale of Receivership Property ("Prior Sale Motion"), seeking approval of the State Court to sell the assets of Nord. On April 25, 2015, the director-shareholders of Nord filed an objection to the Receiver's Prior Sale Motion. On April 27, 2015, the State Court conducted a hearing on the Receiver's Prior Sale Motion and granted the Receiver's Prior Sale Motion, issuing a sale order (the "Prior Sale Order"). In granting the Prior Sale Motion, the State Court expressly overruled the director-shareholders' objection, after they

1  indicated in Court that they did not have funds to operate Nord or to pay Nord's creditors.

2  *Exhibit C.*

3      Despite the Prior Sale Order, the prior sale of Nord's assets was not consummated.

4  On October 2, 2015, the Receiver filed a Motion to Approve Sale of Receivership Property

5  Free and Clear of Liens, Claims, and Interests (the "Current Sale Motion"), and a hearing

6  was scheduled in the State Court for October 15, 2015.  At the hearing on October 15, 2015,

7  the Receiver learned that a bankruptcy had been filed on behalf of Nord by Nord director

8  Robert Hirsch on October 15, 2015.

9  **II.    ARGUMENT**

10      **a.  Cause exists to dismiss this case due to an unauthorized filing**

11      It is well settled law that "a bankruptcy court may *sua sponte* dimiss a bad faith filing

12  a chapter 11 petition filed solely to prosecute a collateral attack" on a state court and the

13  debtor has no realistic chance or intention of reorganizing. *In re Blumenberg*, 263 B.R. 704,

14  712 (E.D.N.Y. 2001). A bankruptcy court has broad discretion to dismiss a chapter 11

15  petition for cause under 11 U.S.C. §1112(b). There are "numerous cases holding that it

16  constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical

17  advantage regarding litigation ongoing in a nonbankruptcy forum." *In re Silberkraus*, 253

18  B.R. 890, 905 (Bankr. C.D. Cal. 2000).

19      Section 1112(b) of the bankruptcy code provides:

20      **(b)(1)** Except as provided in paragraph (2) and subsection (c), on request of a party in
       interest, and after notice and a hearing, the court shall convert a case under this
21      chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in
       the best interests of creditors and the estate, for cause unless the court determines that
22      the appointment under section 1104(a) of a trustee or an examiner is in the best
       interests of creditors and the estate.
23

24  11 U.S.C.A. § 1112 (West).

25      The equity holders that filed this bankruptcy did so without a prospect of

26  reorganization. They have already admitted that they do not have the funds to continue

operation. The only hope for this property is a sale of the property, the superior court has already explicitly found that there is not a buyer "that would save any of the equity of the shareholders." The equity holders are simply forum shopping the sale venue and that by causing havoc on the sale process that they will receive some tactical advantage that they can leverage into a return.

"[I]t is generally accepted that a bankruptcy case filed on behalf of an entity without authority under state law to act for that entity is improper and must be dismissed." *In re A-Z Elecs., LLC*, 350 B.R. 886, 891 (Bankr. Idaho 2006); *see e.g. Price v. Gurney*, 324 U.S. 100, 106 (1945).

The Pima County Superior Court entered an Order with the consent of the Directors that only the Receiver would have the authority to file a bankruptcy petition. This is a final non-appealable order in which the Pima County Superior Court has affirmatively determined that only the Receiver has the ability to file for bankruptcy for the Debtor under Arizona state law. As the bankruptcy was not filed by a party with authority under state law, this bankruptcy must be dismissed.

### b. Cause exists for modification of the bankruptcy stay

Additionally, cause exists to modify the stay pursuant to 11 U.S.C. §362(d)(1). The equity holders that filed the bankruptcy petition have no ability to adequately protect the property. Not only do they not have the ability to pay real property taxes or otherwise provide adequate protection for a subsequent sale. Neither they have nor the Receiver has any way to pay for operations that are necessary to prevent potential environmental damage. The Superior Court in overruling the equity holders' objections in the Prior Sale Order received an admission from the Equity Holders that they did not have funds to operate the Debtor.

**c. In the alternative, this Court should abstain or suspend the proceedings**

Section 305(a)(1) allows the Court in "the interests of creditors and the debtor" dismiss or suspend a bankruptcy case. This is an extraordinary remedy and the discretion of the bankruptcy court should be guided by a totality of the circumstances, such an order is explicitly "not reviewable by appeal." *See In re IT, LLC*, 2015 Bankr. LEXIS 1525 (Bankr. D. Alaska 2015).

The totality of the circumstances justifies abstention or suspension of the case to allow the Pima County Superior Court to consider the sale order. The Debtors and the Creditors with an actual stake in the sale in the property, all benefit from a dismissal. The Pima County Superior Court has set Wednesday October 21, 2015 at 8:30 AM as a tentative date to consider the sale, the Pima County Superior Court has informed the parties that they have limited availability in the subsequent eight days due to a jury trial.

The Equity holders previously tried to challenge a previous sale in the Superior Court and were denied when they acknowledged that they did not have funds to operate the mine. Now, the Receiver does not have funds available to continue to operate the mine. The sale proposed in the Superior Court allows for the mine to continue operations as it transitions ownership. The failure to approve an immediate sale will result in the closing of the mine with substantial negative implications for the employees of the Debtors, environmental controls at the Arizona Department of Environmental Quality, vendors, and counter-parties. All of whom were noticed of the sale in the Superior Court, none of whom objected prior to the Equity of the company making this last-minute unauthorized filing.

The circumstances of this case make abstention, suspension or dismissal the only equitable resolutions.

**III. CONCLUSION**

The Receiver therefore respectfully requests that the court enter an order dismissing this bankruptcy case as an unauthorized filing. In the alternative, the Receiver requests the

1  Court abstain or suspend the proceedings to allow for the Pima County Superior Court to

2  modify the stay "for cause," or resolve the Receiver's sale motion. In either scenario, the

3  Receiver requests this Court maintain jurisdiction to determine sanctions for the improper

4  filing, and the damages caused, pursuant to either Rule 9011 of the Bankruptcy Rules of

5  Procedure, Rule 11 of the Federal Rules of Procedure, or the inherent powers of the Court.

6        DATED:  October 15, 2015.

7                                              MESCH, CLARK & ROTHSCHILD, P.C.

8

9

10                                      By_____
                                               Michael McGrath
11                                             Isaac D. Rothschild
                                               Attorneys for the Receiver
12

13  COPIES served as indicated below
    this 15th day of October, 2015, upon:
14
    Eric Slocum Sparks
15  Eric Slocum Sparks, P.C.
    110 S. Church Ave., Suite 2270
16  Tucson, AZ  85701
    Email eric@ericslocumsparkspc.com
17
    Attorneys for Debtor
18
    Cathy L. Reece and Nancy J. March
19  Fennemore Craig, P.C.
    One South Church Avenue, Suite 1000
20  Tucson, AZ 85701-1627
    Telephone: (520) 879-6800
21  Attorneys for Nedbank Limited
    Email creece@fclaw.com
22  Email: nmarch@fclaw.com
23

24

25

26

1

Gary F. Urman
DeConcini McDonald Yetwin & Lacy, P.C.

2

2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

3

Attorneys for Nord Resources Corp.

4

Email gurman@dmyl.com

5

James B. Reed
Baird Williams & Greer, LLP

6

6225 N. 24th St., Suite125

7

Phoenix, AZ 85016-2044
Attorneys for Empire Southwest, LLC

8

Email jreed@bwglaw.net

9

Charles R. Hyde

10

The Law Office of C.R. Hyde

11

182 N. Court Avenue
Tucson, AZ 85701-1002

12

Attorney for Bernard Skaggs
Email crhyde@oldpueblobankruptcy.com

13

14

Jordan A. Kroop
Perkins Coie LLP

15

2901 N. Central Ave., Suite 2000
Phoenix, AZ 85012-2788

16

Attorneys for Royal Crescent Valley, Inc.

17

Email JKroop@perkinscoie.com

18

Kevin M. Sherlock

19

Heurlin Sherlock
1636 N. Swan Road, Suite 200

20

Tucson, AZ 85712-4096
Attorneys for Farwest Pump Company

21

Email KSherlock@aztoplawyers.com

22

23

24

25

26

| | |
|---|---|
| 1 | Lewis Schorr and Mark Patton |
| | Lewis Roca Rothgerber LLP |
| 2 | One South Church #700 |
| | Tucson, AZ 85701 |
| 3 | Attorneys for Excelsior |
| 4 | Email lschorr@lrrlaw.com |
| | Email mpatton@lrrlaw.com |
| 5 | |
| 6 | Office of the U.S. Trustee |
| | 230 N. First Avenue, Suite 204 |
| 7 | Phoenix, AZ  85003 |
| | Email Elizabeth.C.Amorosi@usdoj.gov |
| 8 | |
| 9 | |
| | By ____ s/ M.B. Thompson _____ |
| 10 | |
| 11 | 22T5181 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

Exhibit A

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

14 NOV 18 PM 3:31

K. YLVISAKER, DEPUTY

1  FENNEMORE CRAIG, P.C.)
   Cathy L. Reece (005932)
2  Nancy J. March (No. 012802)
   One South Church Avenue
3  Suite 1000
   Tucson, AZ 85701-1627
4  Telephone: (520) 879-6800
   Email: creece@fclaw.com
5  Email:nmarch@fclaw.com

6  Attorneys for Plaintiff
   Nedbank Limited

7

8

9                    SUPERIOR COURT OF ARIZONA

                            PIMA COUNTY
10

11 NEDBANK LIMITED,                  Case No. C20146008

12            Plaintiff,

13       v.                          ORDER APPOINTING RECEIVER

14 NORD RESOURCES
   CORPORATION, a Delaware
   corporation,                      [Assigned to           ]
15
              Defendant.
16

17

18       Pursuant to A.R.S. §§ 12-1241 and 12-1242, the Court, upon consideration of

19 Plaintiff Nedbank Limited's ("Plaintiff") *Verified Complaint* and *Application for the*

20 *Appointment of a Receiver* (the "Application") against Defendant Nord Resources

21 Corporation ("Defendant"), for all of the Defendant's real and personal property as more

22 specifically described in detail in the Loan Documents attached to the Complaint and in

23 connection with the operation of the Defendant's business operations which is commonly

24 known as Johnson Camp Mine in Cochise County, Arizona (the "Property"), and having

25 found that Plaintiff holds a valid and perfected first priority lien on the Property, which

26 secures the Indebtedness held by Plaintiff, that Defendant is in default under the Loan

FENNEMORE CRAIG, P.C.
   TUCSON

9725665/019778.0001

1   Documents, that appointment of a receiver is appropriate and necessary to protect the

2   interests of Nedbank in its collateral, and good cause appearing therefor,

3       **IT IS HEREBY ORDERED AND ADJUDGED** granting the Application in its

4   entirety.

5       **IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** as

6   follows:

7       1.    **APPOINTMENT OF RECEIVER:**  Christopher G. Linscott of Keegan,

8   Linscott & Kenon, P.C. is hereby appointed as a receiver (the "Receiver") for the Property

9   and all the business operations conducted by Defendant in connection with the Property.

10  Pursuant to Rule 66, Ariz. R. Civ. P. and A.R.S. § 12-1241, the Receiver is appointed

11  effective immediately. The Receiver shall file an oath of receiver promptly with the Clerk

12  of the Superior Court, and within five (5) business days of the date of this Order, shall

13  post a bond in the amount of $5,000 pursuant to Ariz. R. Civ. P. 66(b)(2).  The cost of the

14  bond shall be a reimbursable expense pursuant to Paragraph 3 below.

15      2.    **POSSESSION OF RECEIVER:** The Receiver shall take immediate

16  possession, custody, and control of all the Property, including all real, personal, tangible

17  and intangible property, owned by Defendant or in which the Defendant has an interest or

18  in connection with the Defendant's business operations. The Receiver is authorized and is

19  entitled to exercise all of the Defendant's rights in any and all Property in which the

20  Defendant has an interest and in connection with the Defendant's business operations.

21      3.    **DUTIES, RIGHTS, AND POWERS OF THE RECEIVER:** The

22  Receiver is granted all of the rights and powers available to receivers at common law and

23  in equity in Arizona, including but not limited to the following powers, duties, and

24  authorities:

25          (a)    *Possession.* The Receiver shall enter on and take possession of the

26  Property and exercise all of the rights of the Defendant therein;

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 2 -

(b)   *General Operation and Management.* The Receiver shall operate the Defendant's business pursuant to the Budget described below, to manage, maintain, and preserve the Property for the duration of this receivership in a reasonable, prudent, diligent and efficient manner to maximize its value. The Receiver may enter into contracts with third parties to operate, manage, maintain, and preserve the Property in the best interest of the Receivership Estate (which means the totality of the Property, accounts, assets, rights, and obligations the Receiver has authority to manage and control in accordance with this Order) (the "Receivership Estate"). The Receiver may, in his business judgment, operate, manage, control, and conduct in the ordinary and usual course of business, and do all things and incur the risks and obligations ordinarily incurred by owners, managers, and operators of similar businesses, and no such risks or obligations so incurred shall be the personal risk or obligation of Receiver, but shall be a risk or obligation of the Receivership Estate only;

(c)   *Receiver's Agents.* The Receiver shall employ, hire, engage, and retain attorneys, certified public accountants, investigators, consultants, and any other personnel or employees at commercially reasonable rates, which the Receiver deems necessary to assist him in the discharge of his duties, and with the parties' consent, any such persons or entities may be affiliates of the Receiver;

(d)   *Collection of Proceeds and Revenues.* Subject to Plaintiff's lien in all such cash collateral, the Receiver shall collect the proceeds and revenues derived from the Property, and to bring and prosecute all proper actions for the: (i) collection of revenues derived from the Property, (ii) removal from the Property of persons not entitled to entry thereon or operation thereof, (iii) protection of the Property, and (iv) damage caused to the Property. The Receiver is authorized to present for payment any checks, promissory notes, money orders or other forms of payment made payable to the Defendant or any of their members, principals, affiliates, agents, servants or employees, which

FENNEMORE CRAIG, P.C.
Tucson

9725665/019778.0001

- 3 -

constitute revenues or proceeds of the Defendant, and to endorse same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein (collectively, the "Proceeds" and "Revenues");

(e) *Utility Services and Deposits*. The Receiver shall continue to utilize the Defendant's utility accounts, if any, that provide services to the Property; or transfer the Defendant's existing utility accounts to the name of the Receivership Estate; or to open new utility accounts in the name of the Receivership Estate to provide services to the Property. The Receiver shall be entitled to utilize any of the utility deposits or transfer any utility deposits relating to the Defendant to the Receivership Estate. No third party is authorized to combine the accounts of the Receivership Estate with the accounts of any other Receivership Estate in which this Receiver is appointed;

(f) *Insurance*. The Receiver shall use commercially reasonable efforts to confirm that the Property is adequately insured, to promptly report any evidence or findings to the contrary to the parties and to the Court, and to maintain adequate insurance over the Property to the same extent and in the same manner as it had heretofore been insured, or as in the judgment of Receiver may seem fit and proper and to cause all presently existing policies to be amended by adding the Receiver and/or the Receivership Estate as an additional insured(s) as soon as reasonably possible. The Receiver shall confirm and maintain Plaintiff's loss payee status on all insurance policies concerning the Property. The Receiver may, as to any insurance claims, make proof of loss, intervene in, or assert a claim, adjust and compromise any insurance claims, and collect and receive any insurance proceeds. All such insurance policies shall name the Receiver, the Receivership Estate, and any management company retained by Receiver as a loss payee with respect to all casualty policies;

(g) *Books, Records, and Accounts*. The Receiver shall take possession and control of all of the books, records, correspondence, and other accounting documents

FENNEMORE CRAIG, P.C.
Tucson

9725665/019778.0001

- 4 -

1  of the Defendant, whether paper or electronic, which relate to, refer to, or account for the

2  assets, revenues, proceeds, and/or liabilities of the Defendant, whether in the possession

3  and control of the Defendant, or in possession of its members, principals, affiliates,

4  agents, accountants, servants or employees, and to take possession of all of the

5  Defendant's bank and deposit accounts used in connection with the business operations.

6  The Defendant, if it has not already done so, shall promptly provide the Receiver with the

7  tax identification number(s) utilized for the operation of the business. The Receiver shall

8  be entitled to utilize the aforementioned tax identification number(s) during his operation

9  of the business. The Receiver shall have no responsibility for filing federal or state income

10  or property tax returns related to the Defendant, but may do so if he deems it appropriate

11  to do so. All banks and financial institutions, upon presentation of a copy of this Order,

12  shall provide copies of any requested records regarding any such accounts used in

13  connection with the Defendant to the Receiver or his agent;

14        (h)  *Contracts*. The Receiver shall continue in effect, amend, cancel, or

15  cure any contracts presently existing and relating to the Property. The Receiver may enter

16  into, modify and/or reject contracts affecting any part or all of the Property, and may

17  exercise the Defendant's rights existing under such contracts, including but not limited to

18  filing suit thereon, if necessary. The appointment of the Receiver shall not constitute a

19  breach or default under any contracts presently affecting the Property;

20        (i)  *Bank Accounts*. Subject to the Plaintiff's liens, the Receiver shall

21  issue demands for the freezing and turnover of funds upon any financial institution, which

22  the Receiver has determined is a depository of funds belonging to, or arising from, the

23  Property, whether such accounts be titled in the name of the Defendant or not. Effective as

24  soon as possible after entry of this Order, the Receiver may either maintain the existing

25  accounts and change the name and signatures or may establish and maintain a separate

26  operating account(s) (the "Operating Account") into which the Receiver shall deposit all

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 5 -

receipts from the Property. All Revenues, Proceeds and Advances shall be deposited into the Operating Account of Receiver and shall be subject to the liens of Plaintiff. To the extent the Receiver establishes any new deposit accounts, Receiver shall cooperate with Plaintiff so that Deposit Account Control Agreements are obtained from all banks used by the Receiver to preserve Plaintiff's security interest in all its cash collateral;

(j) *Sale or Liquidation.* The Receiver shall hire brokers or investment bankers for the Property as the Receiver deems appropriate to assist with listing and marketing the Property for sale or the Defendant's business operations. Receiver may sell the Property or business operations upon order of this Court and Plaintiff's written consent approving the sale. Receiver or Plaintiff shall file a Motion to Approve Sale and Plaintiff and/or Defendant shall have ten (10) business days to file an objection with this Court. To the extent no timely objection is filed, the Motion to Approve Sale shall be deemed granted and this Court may approve such sale;

(k) *Payment of Receivership Expenses.* Subject to the Plaintiff's liens and consent, and pursuant to the Budget approved by Plaintiff, the Receiver may apply the Revenues and Proceeds of the Property as follows: (1) all the Receiver's approved fees and expenses; (2) the current and on-going expenses of the receivership incurred in the ordinary course of business; (3) the obligations owed to the Plaintiff under the Loan Documents; and (4) to such other obligations incurred in accordance with this Order;

(l) *Advances.* If the net income from the Property is insufficient to pay the receivership expenses or the ordinary, necessary, and reasonable costs and expenses of the management, operations, and maintenance of the Property, Plaintiff may, in its sole discretion, but without obligation to do so, advance to the Receiver sufficient funds to pay such receivership expenses or ordinary, necessary and reasonable costs and expenses as Plaintiff may elect to be paid ("Advances"). The Advances made by Plaintiff shall be added to the principal under the Loan Documents, and shall be secured by the

1   Plaintiff's Security Documents, including the Amended Deed of Trust, and other Loan
2   Documents encumbering the Property, with the same priority as Plaintiff's existing liens
3   encumbering the Property and other collateral. The Receiver shall be and is hereby
4   authorized and directed to issue Receivership Certificates to Plaintiff, at Plaintiff's
5   request, reflecting the amount and priority of the Advances, and to cause such
6   Receivership Certificates to be recorded in the real property records if requested by
7   Plaintiff;

8            (m)    *Payment of Property Expenses.* To the extent reflected in the Budget
9   which has been approved by the Plaintiff, the Receiver may expend funds to purchase
10  materials, supplies, fuel, and services as the Receiver reasonably deems necessary and
11  advisable in the ordinary course of business to assist him in performing his duties
12  hereunder and to pay therefore the ordinary and usual rates and prices out of the Proceeds
13  and Revenues generated by the Property that may come into the possession of the
14  Receiver or the Advances made by Plaintiff to Receiver. All expenses paid by the
15  Receiver must be pursuant to and as provided for in the Budget to be approved by the
16  Plaintiff.  The Receiver shall not be expected to pay any of the past due or current
17  property taxes assessed against the Property;

18           (n)    *Payment of Pre-Receivership Debts.* Except as deemed by the
19  Receiver to be necessary to protect and preserve the Property, the Receiver may not pay
20  and discharge out of the funds coming into the Receiver's hands any outstanding
21  unsecured debt that the Defendant incurred prior to the entry of this Order;

22           (o)    *Permits and Licenses.* The Receiver shall apply, obtain, and pay any
23  reasonable fees for any lawful license, permit or other governmental approval relating to
24  the Property; to confirm the existence of and exercise the privileges of any existing license
25  or permit or the operation thereof related to the Defendant and the Property, and do all
26  things necessary to protect and maintain such licenses, permits and approvals, including,

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 7 -

but not limited to, taking such license in the name of the Receiver personally, or Receivership Estate, or his nominee. The Receiver may, in the name of the Receivership Estate, continue to utilize all of the Defendant's permits and licenses related to the Property, or transfer the Defendant's permits and licenses related to the Property to the name of the Receivership Estate, or apply for new permits and licenses related to the Property in the name of the Receivership Estate. The appointment of the Receiver shall not constitute a breach or default under any licenses, approvals, or permits presently affecting the Property;

(p)     *Receiver's Reports.* In addition to reports required by the Plaintiff, from time to time so long as the Property shall remain in its possession or care, the Receiver shall prepare, file with the Court, and serve on all interested parties, a report of the condition and operation of the Property, which includes profit-loss statements, current rent roll, balance sheets, and revenue receipts and disbursements on a cash reporting basis, and other relevant operational issues that occurred during the preceding month(s). These interim reports shall include an itemization of the Receiver's fees and expenses of the Receivership Estate, including fees and costs of accountants and attorneys authorized by the Court, incurred for each reporting period in the operation and administration of the Receivership Estate. The Receiver shall follow accounting standards typical for similar businesses, and may enlist the aid of accountants for preparation of the Receiver's reports to the Court. Upon service of each report, and after expending the necessary funds to operate the Property and business of the Defendant and pay all reasonable and necessary costs and expenses associated with such operation;

(q)     *Payment of Receiver.* The Receiver, shall be compensated for its duties as Receiver under this Order at the rate of $335 per hour;

(r)     *Budget and Actual-to-Budget Comparison Reports.* The Receiver shall be permitted to use the Advances and the Proceeds and Revenues only as set forth in

1  and pursuant to the Budget and this Order. All Advances, Proceeds and Revenues shall be

2  deposited into the bank accounts as set forth above, which shall only be disbursed by

3  Receiver pursuant to the express items in the approved Budget. Receiver shall prepare and

4  submit to Plaintiff a detailed budget acceptable to Plaintiff ("Budget") that sets forth all

5  projected receipts of Receiver, including all Advances from Plaintiff, together with a

6  weekly forecast of other revenues, expenses and available cash. On a weekly basis

7  Receiver shall prepare and submit to plaintiff an actual-to-budget comparison report

8  ("Actual-to-Budget Report"). The Budget may be amended from time to time by written

9  agreement between the Receiver and Plaintiff. Receiver shall comply with and adhere to

10  the Budget. Any deviation from the Budget shall require the prior written consent of

11  Plaintiff. Receiver shall only use Advances, Revenues and Proceeds for the uses and in

12  the amounts set forth in the Budget, unless Plaintiff provides prior written consent to other

13  sources of funds or revenues. Any deviation from the Budget shall be a violation of this

14  Order;

15         (s)   *Final Statement of Account.* Within sixty (60) days of the termination

16  of the Receivership Estate, the Receiver shall file with the Court a "Final Report and

17  Accounting" or similar report, which sets forth any and all fees and expenses claimed by

18  the Receiver. If no objection thereto is filed and served on or within ten (10) days

19  following service thereof, such Final Report and Accounting may be paid, the Receiver

20  may be discharged, and the Receiver's bond may be exonerated. If an objection is timely

21  filed and served, such Final Statement of Account shall not be paid absent further order of

22  this Court. In the event objections are timely made to such fees and expenses, those

23  specific fees and expenses objected to will be paid within ten (10) days of an agreement

24  among the parties or the entry of an order by this Court adjudicating the matter;

25         (t)   *Disclosure.* The Receiver shall disclose to all parties any financial

26  relationship between the Receiver and any company or person he hires to assist in the

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 9 -

1   management of the Property;

2         (u)   *Property Name and Description.* The Receiver is authorized to

3   operate the business of Defendant under any existing name or trade name and utilize any

4   existing intellectual property that is part of the Property;

5         (v)   *Litigation.* The Receiver may, in his discretion, intervene in, initiate,

6   prosecute, defend, and/or resolve any action related to the Property or the Defendant,

7   including, without limitation, those brought against the Defendant, whether currently

8   pending or filed in the future. The Receiver, in his discretion, may apply to this Court to

9   consolidate or transfer any claim or suit to this Court. No judgment creditor may execute a

10   judgment against any of the Property or Defendant without first obtaining approval from

11   this Court;

12         (w)   *General Powers.* To do any acts which the Receiver, in his sole

13   discretion and business judgment, deems appropriate or desirable to protect the value of

14   the Property. To use such measures, legal or equitable, as the Receiver deems desirable,

15   necessary or appropriate in his business judgment to protect and preserve the value of the

16   Property; and to generally do such other things as may be necessary or incidental to the

17   foregoing specific powers, directions and general authorities and to take actions relating to

18   the Property beyond the scope contemplated by the provisions set forth above, provided

19   the Receiver first obtains the approval from this Court for any actions beyond the scope

20   contemplated herein; and

21         (x)   The Receiver shall continue to maintain the employment of Wayne

22   Morrison, Defendant's Chief Executive Officer, to assist the Receiver in managing the

23   day to day operations of Defendant's business. Mr. Morrison shall report to and take

24   instructions from the Receiver. The Receiver shall have the power to replace or terminate

25   his employment without cause in his reasonable business judgment.

26

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 10 -

4.  **SHAREHOLDERS ISSUES:** The Receiver may not make any payments, distributions or transfers directly or indirectly to any shareholders of the Defendant. The Receiver shall not be responsible for or required to prepare any audits or for making any state or federal securities filing which might be required of the Defendant.

5.  **NON-INTERFERENCE WITH RECEIVER:** All creditors of the Defendant, all persons or entities with actual knowledge of this Order, including, without limitation, the parties to this action, and the officers, directors, members, principals, affiliates, agents, servants and employees (current or former) of the Defendant, are enjoined from:

(a)  Interfering with the Receiver, directly or indirectly, in the management and operation of the Property or business operations of the Defendant;

(b)  Interfering with the Receiver, directly or indirectly, in the collection of revenues derived from the Property or the business operations of the Defendant;

(c)  Collecting or attempting to collect from the Property or Defendant;

(d)  Extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Property without the prior written consent of the Receiver and this Court;

(e)  Doing any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Property (including the revenues or proceeds thereof) or the business operation of the Defendant; and

(f)  Doing any act which directly or indirectly interferes in any manner with the discharge of the Receiver's duties under this Order and the operation and management of the Property or the Defendant's business.

6.  **TURNOVER:** To the extent they have not done so already, the Defendant and their officers, directors, members, principals, affiliates, agents, servants, employees, contractors and all other persons or entities in possession thereof, including but not limited

to financial institutions, local, city, county, and state governmental agencies, quasi-governmental agencies and utilities, and all other persons with actual or constructive knowledge of this Order and their agents and employees, shall immediately:

(a)   Turn over to the Receiver possession of the Property, including the records, books of account, ledgers and all business records for the Defendant, wherever located and in whatever mode maintained (including, without limitation, information contained on computers, as well as all banking records, statements and canceled checks);

(b)   Turn over to the Receiver all bank accounts used in connection with the Property and arrange for the Receiver to have sole signature authority over such accounts;

(c)   Turn over to the Receiver all documents which constitute or pertain to all licenses, permits, development plans, surveys, reports, or governmental approvals relating to the Property;

(d)   Turn over to the Receiver all documents which constitute or pertain to insurance policies, whether currently in effect or lapsed, which relate to the Property;

(e)   Turn over to the Receiver all contracts, leases and subleases, royalty agreements, licenses, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to the Property;

(f)   Turn over to the Receiver all documents of any kind pertaining to any and all toxic chemicals or hazardous material, if any, ever brought, used and/or remaining in the possession of the Defendant, including, without limitation, all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices;

(g)   Turn over to the Receiver all revenues or proceeds derived from the Property; and

(h)   Turn over to the Receiver all passwords needed to access all records and files maintained on any computers, servers, or other electronic devices that belong to

1   the Defendant, or any other computers, servers, or other electronic devices on which

2   information related to the Property is stored.

3       7.   **DISCHARGE**: Immediately upon the liquidation of the Property or sale of

4   the Property or dissolution of the Defendant, the Receiver shall provide notice to this

5   Court, and upon such notice relinquish control of the Property and be discharged from his

6   duties under this Order with the exception of the obligation to submit and obtain approval

7   of the Final Report and Accounting.

8       8.   **RECEIVERSHIP ESTATE:**

9         (a)   Litigation Stay. No person or entity shall file suit against the

10   Receiver, or take other legal action against the Receiver or the Defendant or Property,

11   with the exception of this action, without an order of this Court permitting the suit or

12   action; provided, however, no prior Court order is required to enforce the provisions of

13   this Order or any other order of this Court in this action. In any event, no such suit shall be

14   brought against the Receiver personally, but only against the Receivership Estate.

15         (b)   Limitation of Liability. The Receivership Estate, the Receiver, and its

16   employees, agents, attorneys and all professionals and management companies retained by

17   the Receiver shall have no liability for any obligations, or debts incurred by the parties to

18   this action. The Receiver and his employees, agents, attorneys, and all professionals and

19   management companies retained by the Receiver shall have no personal liability, and they

20   shall have no claim asserted against them relating to the Receiver's duties under this

21   Order, without prior authority from this Court as stated in Paragraph 8(a) above. In any

22   event, no suit shall be maintained against the Receiver unless the Receiver has acted

23   outside the scope of his authority and committed fraud or gross negligence in the

24   administration of his duties. The Receiver is acting solely in his capacity as a Receiver

25   and the debts of the Receiver are solely the debts of the Receivership Estate.

26

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 13 -

(c)     Indemnification of Receiver. The Receiver's liability for any action taken in the course of his duties shall be limited to the Receivership Estate. The Receivership Estate shall indemnify and hold harmless the Receiver, and any affiliate, member, officer or agent of the Receiver from any claims, liability, loss, cost or expense (including reasonable attorneys' fees and costs) arising out of this Receivership, unless the Receiver has acted outside the scope of his authority and committed fraud or gross negligence in the administration of his duties.

9.     **ADDITIONAL DUTIES AND POWERS.**     Defendant agrees not to oppose, impede, obstruct, hinder, delay or otherwise interfere, and will cooperate, with any steps the Receiver takes to operate, manage and sell the Property consistent with the terms of this Order. Defendant shall not have the right to participate in the Receiver's actions and their consent is not necessary. Further, the Receiver shall have the power and authority to file a chapter 7 or 11 bankruptcy petition. Such right to file a chapter 7 or 11 shall be the exclusive right of the Receiver. Defendant hereby grants such exclusive authority and right to the Receiver. Further, to the extent a chapter 7 or 11 petition is filed or an involuntary chapter 7 or 11 is granted, the Defendant agrees that the Receiver (A) shall be the designated representative of the Debtor-in-Possession, (B) shall continue to stay in possession of the Property and shall have the sole right to operate, manage and sell the Property and (C) shall have all the rights and powers of the Debtor-in-Possession, including but not limited to, the right and power to file a Motion to Sell the Property, to negotiate and obtain DIP financing and use of cash collateral with the Plaintiff, and to file a chapter 11 plan within the exclusivity period, among other things. Defendant hereby transfers such rights and powers to the Receiver and agrees not to challenge or oppose the actions of the Receiver in the chapter 7 or 11 case. In addition, Defendant agrees and acknowledges that (1) Plaintiff would not otherwise agree to advance any more funds to

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 14 -

the Receiver or a debtor in possession or to continue to allow the use of its cash collateral or its Property without the protections of this provision and this Order; (2) there is no value in the Property for equity holders or unsecured creditors; (3) Defendant has no other source of funds and no ability to continue to operate and manage the Property without the advance of more funds from Plaintiff; and (4) all of its assets are encumbered to Plaintiff.

10.    **CONTACTING THE RECEIVER**: Individuals or entities interested in the Property, including but without limitation, all lessors, lessees, customers, principals, investors, suppliers, and creditors, may contact the Receiver directly by and through the following individual: Christopher G. Linscott, Keegan, Linscott & Kenon, PC, 33 N. Stone Avenue, Suite 1100, Tucson, Arizona 85710, (520) 884-0176, clinscott@klkcpa.com. . Notice by email shall be sufficient for service of process of any documents or pleadings filed by the Receiver.

11.    **NOTICE TO THE PARTIES**: Mailing copies of pleadings, reports, and motions filed by the Receiver, Plaintiff, and/or Defendant in this action shall constitute valid service on all parties for notice purposes.

12.    **ADDITIONAL DUTIES**. The Plaintiff, Defendant, or Receiver may at any time apply to this Court for any further or other instructions and powers necessary to enable the Receiver to perform his duties properly.

DATED this _18th_ day of November, 2014

_D. Douglas Metcalf_
Pima County Superior Court Judge

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 15 -

1   Stipulated and agreed as to form and substance:

2   FENNEMORE CRAIG, P.C.

3   By: _Nancy J. March_
    Cathy L. Reece
4   Nancy March
    Attorneys for Nedbank Limited
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Exhibit B

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
11/19/2014 1:59:05 PM
BY: ALAN WALKER
DEPUTY

1  FENNEMORE CRAIG, P.C.)
   Cathy L. Reece (005932)
2  Nancy J. March (No. 012802)
   One South Church Avenue
3  Suite 1000
   Tucson, AZ 85701-1627
4  Telephone: (520) 879-6800
   Email: creece@fclaw.com
5  Email:nmarch@fclaw.com

6  Attorneys for Plaintiff
   Nedbank Limited

7

8                    SUPERIOR COURT OF ARIZONA

9                           PIMA COUNTY

10

11  NEDBANK LIMITED,                 Case No. C20146008

12           Plaintiff,

13       v.                          NOTICE OF CONSENT OF NORD
                                     RESOURCES CORPORATION TO
14  NORD RESOURCES                   ENTRY OF ORDER APPOINTING
    CORPORATION, a Delaware          RECEIVER
15  corporation,

16           Defendant.              Assigned to Hon. Judge Douglas Metcalf

17                                   (Division 16)

18

19

20        By its signature below, Defendant Nord Resources Corporation ("Defendant")

21  hereby formally consents to the entry of the "Order Appointing Receiver", a true and

22  correct copy of which is attached to this pleading (the "Order"). Defendant previously

23  consented to entry of the Order outside of recorded court proceedings, after Defendant had

24  had an opportunity to review the Order and prior to its approval and entry by the Court.

25

26

FENNEMORE CRAIG, P.C.    9735215/019778.0001
     TUCSON

DATED this 19th day of November, 2014

FENNEMORE CRAIG, P.C.

By _Nancy J. March_
Cathy L. Reece
Nancy J. March
Attorneys for Plaintiff Nedbank Limited

Consent to Entry of Order Appointing
Receiver:

DECONCINI, MCDONALD, YETWIN & LACY PC

By: _Michael Urman_
Michael Urman
Gary Urman
Attorneys for Nord Resources Corporation

FENNEMORE CRAIG, P.C.
TUCSON

9735215/019778.0001

1  FENNEMORE CRAIG, P.C.
   Cathy L. Reece (005932)
2  Nancy J. March (No. 012802)
   One South Church Avenue
3  Suite 1000
   Tucson, AZ 85701-1627
4  Telephone: (520) 879-6800
   Email: creece@fclaw.com
5  Email:nmarch@fclaw.com

6  Attorneys for Plaintiff
   Nedbank Limited

7

8

COPY

NOV 1 8 2014

TONI L. HELLON
CLERK, SUPERIOR COURT

9         SUPERIOR COURT OF ARIZONA

              PIMA COUNTY

10

11  NEDBANK LIMITED,                    **Case No. C20146008**

12            Plaintiff,

13       v.                            **ORDER APPOINTING RECEIVER**

14  NORD RESOURCES
    CORPORATION, a Delaware
15  corporation,                       **[Assigned to          ]**

16            Defendant.

17

18          Pursuant to A.R.S. §§ 12-1241 and 12-1242, the Court, upon consideration of

19  Plaintiff Nedbank Limited's ("Plaintiff") *Verified Complaint* and *Application for the*

20  *Appointment of a Receiver* (the "Application") against Defendant Nord Resources

21  Corporation ("Defendant"), for all of the Defendant's real and personal property as more

22  specifically described in detail in the Loan Documents attached to the Complaint and in

23  connection with the operation of the Defendant's business operations which is commonly

24  known as Johnson Camp Mine in Cochise County, Arizona (the "Property"), and having

25  found that Plaintiff holds a valid and perfected first priority lien on the Property, which

26  secures the Indebtedness held by Plaintiff, that Defendant is in default under the Loan

FENNEMORE CRAIG, P.C.
    TUCSON

9725665/019778.0001

Documents, that appointment of a receiver is appropriate and necessary to protect the interests of Nedbank in its collateral, and good cause appearing therefor,

**IT IS HEREBY ORDERED AND ADJUDGED** granting the Application in its entirety.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** as follows:

1. **APPOINTMENT OF RECEIVER:** Christopher G. Linscott of Keegan, Linscott & Kenon, P.C. is hereby appointed as a receiver (the "Receiver") for the Property and all the business operations conducted by Defendant in connection with the Property. Pursuant to Rule 66, Ariz. R. Civ. P. and A.R.S. § 12-1241, the Receiver is appointed effective immediately. The Receiver shall file an oath of receiver promptly with the Clerk of the Superior Court, and within five (5) business days of the date of this Order, shall post a bond in the amount of $5,000 pursuant to Ariz. R. Civ. P. 66(b)(2). The cost of the bond shall be a reimbursable expense pursuant to Paragraph 3 below.

2. **POSSESSION OF RECEIVER:** The Receiver shall take immediate possession, custody, and control of all the Property, including all real, personal, tangible and intangible property, owned by Defendant or in which the Defendant has an interest or in connection with the Defendant's business operations. The Receiver is authorized and is entitled to exercise all of the Defendant's rights in any and all Property in which the Defendant has an interest and in connection with the Defendant's business operations.

3. **DUTIES, RIGHTS, AND POWERS OF THE RECEIVER:** The Receiver is granted all of the rights and powers available to receivers at common law and in equity in Arizona, including but not limited to the following powers, duties, and authorities:

(a) *Possession.* The Receiver shall enter on and take possession of the Property and exercise all of the rights of the Defendant therein;

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 2 -

1    (b)    *General Operation and Management.* The Receiver shall operate the
2    Defendant's business pursuant to the Budget described below, to manage, maintain, and
3    preserve the Property for the duration of this receivership in a reasonable, prudent,
4    diligent and efficient manner to maximize its value. The Receiver may enter into contracts
5    with third parties to operate, manage, maintain, and preserve the Property in the best
6    interest of the Receivership Estate (which means the totality of the Property, accounts,
7    assets, rights, and obligations the Receiver has authority to manage and control in
8    accordance with this Order) (the "Receivership Estate"). The Receiver may, in his
9    business judgment, operate, manage, control, and conduct in the ordinary and usual course
10   of business, and do all things and incur the risks and obligations ordinarily incurred by
11   owners, managers, and operators of similar businesses, and no such risks or obligations so
12   incurred shall be the personal risk or obligation of Receiver, but shall be a risk or
13   obligation of the Receivership Estate only;

14   (c)    *Receiver's Agents.* The Receiver shall employ, hire, engage, and
15   retain attorneys, certified public accountants, investigators, consultants, and any other
16   personnel or employees at commercially reasonable rates, which the Receiver deems
17   necessary to assist him in the discharge of his duties, and with the parties' consent, any
18   such persons or entities may be affiliates of the Receiver;

19   (d)    *Collection of Proceeds and Revenues.* Subject to Plaintiff's lien in all
20   such cash collateral, the Receiver shall collect the proceeds and revenues  derived from
21   the Property, and to bring and prosecute all proper actions for the: (i) collection of
22   revenues derived from the Property, (ii) removal from the Property of persons not entitled
23   to entry thereon or operation thereof, (iii) protection of the Property, and (iv) damage
24   caused to the Property. The Receiver is authorized to present for payment any checks,
25   promissory notes, money orders or other forms of payment made payable to the Defendant
26   or any of their members, principals, affiliates, agents, servants or employees, which

1  constitute revenues or proceeds of the Defendant, and to endorse same and collect the
2  proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein
3  (collectively, the "Proceeds" and "Revenues");

4          (e)     *Utility Services and Deposits.* The Receiver shall continue to utilize
5  the Defendant's utility accounts, if any, that provide services to the Property; or transfer
6  the Defendant's existing utility accounts to the name of the Receivership Estate; or to
7  open new utility accounts in the name of the Receivership Estate to provide services to the
8  Property. The Receiver shall be entitled to utilize any of the utility deposits or transfer any
9  utility deposits relating to the Defendant to the Receivership Estate. No third party is
10  authorized to combine the accounts of the Receivership Estate with the accounts of any
11  other Receivership Estate in which this Receiver is appointed;

12          (f)     *Insurance.* The Receiver shall use commercially reasonable efforts to
13  confirm that the Property is adequately insured, to promptly report any evidence or
14  findings to the contrary to the parties and to the Court, and to maintain adequate insurance
15  over the Property to the same extent and in the same manner as it had heretofore been
16  insured, or as in the judgment of Receiver may seem fit and proper and to cause all
17  presently existing policies to be amended by adding the Receiver and/or the Receivership
18  Estate as an additional insured(s) as soon as reasonably possible. The Receiver shall
19  confirm and maintain Plaintiff's loss payee status on all insurance policies concerning the
20  Property. The Receiver may, as to any insurance claims, make proof of loss, intervene in,
21  or assert a claim, adjust and compromise any insurance claims, and collect and receive
22  any insurance proceeds. All such insurance policies shall name the Receiver, the
23  Receivership Estate, and any management company retained by Receiver as a loss payee
24  with respect to all casualty policies;

25          (g)     *Books, Records, and Accounts.* The Receiver shall take possession
26  and control of all of the books, records, correspondence, and other accounting documents

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

1 of the Defendant, whether paper or electronic, which relate to, refer to, or account for the

2 assets, revenues, proceeds, and/or liabilities of the Defendant, whether in the possession

3 and control of the Defendant, or in possession of its members, principals, affiliates,

4 agents, accountants, servants or employees, and to take possession of all of the

5 Defendant's bank and deposit accounts used in connection with the business operations.

6 The Defendant, if it has not already done so, shall promptly provide the Receiver with the

7 tax identification number(s) utilized for the operation of the business. The Receiver shall

8 be entitled to utilize the aforementioned tax identification number(s) during his operation

9 of the business. The Receiver shall have no responsibility for filing federal or state income

10 or property tax returns related to the Defendant, but may do so if he deems it appropriate

11 to do so. All banks and financial institutions, upon presentation of a copy of this Order,

12 shall provide copies of any requested records regarding any such accounts used in

13 connection with the Defendant to the Receiver or his agent;

14         (h) *Contracts.* The Receiver shall continue in effect, amend, cancel, or

15 cure any contracts presently existing and relating to the Property. The Receiver may enter

16 into, modify and/or reject contracts affecting any part or all of the Property, and may

17 exercise the Defendant's rights existing under such contracts, including but not limited to

18 filing suit thereon, if necessary. The appointment of the Receiver shall not constitute a

19 breach or default under any contracts presently affecting the Property;

20         (i) *Bank Accounts.* Subject to the Plaintiff's liens, the Receiver shall

21 issue demands for the freezing and turnover of funds upon any financial institution, which

22 the Receiver has determined is a depository of funds belonging to, or arising from, the

23 Property, whether such accounts be titled in the name of the Defendant or not. Effective as

24 soon as possible after entry of this Order, the Receiver may either maintain the existing

25 accounts and change the name and signatures or may establish and maintain a separate

26 operating account(s) (the "Operating Account") into which the Receiver shall deposit all

1    receipts from the Property. All Revenues, Proceeds and Advances shall be deposited into
2    the Operating Account of Receiver and shall be subject to the liens of Plaintiff. To the
3    extent the Receiver establishes any new deposit accounts, Receiver shall cooperate with
4    Plaintiff so that Deposit Account Control Agreements are obtained from all banks used by
5    the Receiver to preserve Plaintiff's security interest in all its cash collateral;

6             (j)     *Sale or Liquidation.* The Receiver shall hire brokers or investment
7    bankers for the Property as the Receiver deems appropriate to assist with listing and
8    marketing the Property for sale or the Defendant's business operations. Receiver may sell
9    the Property or business operations upon order of this Court and Plaintiff's written
10    consent approving the sale. Receiver or Plaintiff shall file a Motion to Approve Sale and
11    Plaintiff and/or Defendant shall have ten (10) business days to file an objection with this
12    Court. To the extent no timely objection is filed, the Motion to Approve Sale shall be
13    deemed granted and this Court may approve such sale;

14             (k)     *Payment of Receivership Expenses.* Subject to the Plaintiff's liens
15    and consent, and pursuant to the Budget approved by Plaintiff, the Receiver may apply
16    the Revenues and Proceeds of the Property as follows: (1) all the Receiver's approved fees
17    and expenses; (2) the current and on-going expenses of the receivership incurred in the
18    ordinary course of business; (3) the obligations owed to the Plaintiff under the Loan
19    Documents; and (4) to such other obligations incurred in accordance with this Order;

20             (l)     *Advances.* If the net income from the Property is insufficient to
21    pay the receivership expenses or the ordinary, necessary, and reasonable costs and
22    expenses of the management, operations, and maintenance of the Property, Plaintiff may,
23    in its sole discretion, but without obligation to do so, advance to the Receiver sufficient
24    funds to pay such receivership expenses or ordinary, necessary and reasonable costs and
25    expenses as Plaintiff may elect to be paid ("Advances"). The Advances made by Plaintiff
26    shall be added to the principal under the Loan Documents, and shall be secured by the

Plaintiff's Security Documents, including the Amended Deed of Trust, and other Loan Documents encumbering the Property, with the same priority as Plaintiff's existing liens encumbering the Property and other collateral. The Receiver shall be and is hereby authorized and directed to issue Receivership Certificates to Plaintiff, at Plaintiff's request, reflecting the amount and priority of the Advances, and to cause such Receivership Certificates to be recorded in the real property records if requested by Plaintiff;

(m) *Payment of Property Expenses.* To the extent reflected in the Budget which has been approved by the Plaintiff, the Receiver may expend funds to purchase materials, supplies, fuel, and services as the Receiver reasonably deems necessary and advisable in the ordinary course of business to assist him in performing his duties hereunder and to pay therefore the ordinary and usual rates and prices out of the Proceeds and Revenues generated by the Property that may come into the possession of the Receiver or the Advances made by Plaintiff to Receiver. All expenses paid by the Receiver must be pursuant to and as provided for in the Budget to be approved by the Plaintiff. The Receiver shall not be expected to pay any of the past due or current property taxes assessed against the Property;

(n) *Payment of Pre-Receivership Debts.* Except as deemed by the Receiver to be necessary to protect and preserve the Property, the Receiver may not pay and discharge out of the funds coming into the Receiver's hands any outstanding unsecured debt that the Defendant incurred prior to the entry of this Order;

(o) *Permits and Licenses.* The Receiver shall apply, obtain, and pay any reasonable fees for any lawful license, permit or other governmental approval relating to the Property; to confirm the existence of and exercise the privileges of any existing license or permit or the operation thereof related to the Defendant and the Property, and do all things necessary to protect and maintain such licenses, permits and approvals, including,

1    but not limited to, taking such license in the name of the Receiver personally, or
2    Receivership Estate, or his nominee. The Receiver may, in the name of the Receivership
3    Estate, continue to utilize all of the Defendant's permits and licenses related to the
4    Property, or transfer the Defendant's permits and licenses related to the Property to the
5    name of the Receivership Estate, or apply for new permits and licenses related to the
6    Property in the name of the Receivership Estate. The appointment of the Receiver shall
7    not constitute a breach or default under any licenses, approvals, or permits presently
8    affecting the Property;

9            (p)    *Receiver's Reports*. In addition to reports required by the Plaintiff,
10   from time to time so long as the Property shall remain in its possession or care, the
11   Receiver shall prepare, file with the Court, and serve on all interested parties, a report of
12   the condition and operation of the Property, which includes profit-loss statements, current
13   rent roll, balance sheets, and revenue receipts and disbursements on a cash reporting basis,
14   and other relevant operational issues that occurred during the preceding month(s). These
15   interim reports shall include an itemization of the Receiver's fees and expenses of the
16   Receivership Estate, including fees and costs of accountants and attorneys authorized by
17   the Court, incurred for each reporting period in the operation and administration of the
18   Receivership Estate. The Receiver shall follow accounting standards typical for similar
19   businesses, and may enlist the aid of accountants for preparation of the Receiver's reports
20   to the Court. Upon service of each report, and after expending the necessary funds to
21   operate the Property and business of the Defendant and pay all reasonable and necessary
22   costs and expenses associated with such operation;

23           (q)    *Payment of Receiver*. The Receiver, shall be compensated for its
24   duties as Receiver under this Order at the rate of $335 per hour;

25           (r)    *Budget and Actual-to-Budget Comparison Reports*.  The Receiver
26   shall be permitted to use the Advances and the Proceeds and Revenues only as set forth in

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

- 8 -

and pursuant to the Budget and this Order. All Advances, Proceeds and Revenues shall be deposited into the bank accounts as set forth above, which shall only be disbursed by Receiver pursuant to the express items in the approved Budget. Receiver shall prepare and submit to Plaintiff a detailed budget acceptable to Plaintiff ("Budget") that sets forth all projected receipts of Receiver, including all Advances from Plaintiff, together with a weekly forecast of other revenues, expenses and available cash. On a weekly basis Receiver shall prepare and submit to plaintiff an actual-to-budget comparison report ("Actual-to-Budget Report"). The Budget may be amended from time to time by written agreement between the Receiver and Plaintiff. Receiver shall comply with and adhere to the Budget. Any deviation from the Budget shall require the prior written consent of Plaintiff. Receiver shall only use Advances, Revenues and Proceeds for the uses and in the amounts set forth in the Budget, unless Plaintiff provides prior written consent to other sources of funds or revenues. Any deviation from the Budget shall be a violation of this Order;

(s) *Final Statement of Account.* Within sixty (60) days of the termination of the Receivership Estate, the Receiver shall file with the Court a "Final Report and Accounting" or similar report, which sets forth any and all fees and expenses claimed by the Receiver. If no objection thereto is filed and served on or within ten (10) days following service thereof, such Final Report and Accounting may be paid, the Receiver may be discharged, and the Receiver's bond may be exonerated. If an objection is timely filed and served, such Final Statement of Account shall not be paid absent further order of this Court. In the event objections are timely made to such fees and expenses, those specific fees and expenses objected to will be paid within ten (10) days of an agreement among the parties or the entry of an order by this Court adjudicating the matter;

(t) *Disclosure.* The Receiver shall disclose to all parties any financial relationship between the Receiver and any company or person he hires to assist in the

PENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

1    management of the Property;

2            (u)    *Property Name and Description.* The Receiver is authorized to
3    operate the business of Defendant under any existing name or trade name and utilize any
4    existing intellectual property that is part of the Property;

5            (v)    *Litigation.* The Receiver may, in his discretion, intervene in, initiate,
6    prosecute, defend, and/or resolve any action related to the Property or the Defendant,
7    including, without limitation, those brought against the Defendant, whether currently
8    pending or filed in the future. The Receiver, in his discretion, may apply to this Court to
9    consolidate or transfer any claim or suit to this Court. No judgment creditor may execute a
10   judgment against any of the Property or Defendant without first obtaining approval from
11   this Court;

12           (w)    *General Powers.* To do any acts which the Receiver, in his sole
13   discretion and business judgment, deems appropriate or desirable to protect the value of
14   the Property. To use such measures, legal or equitable, as the Receiver deems desirable,
15   necessary or appropriate in his business judgment to protect and preserve the value of the
16   Property; and to generally do such other things as may be necessary or incidental to the
17   foregoing specific powers, directions and general authorities and to take actions relating to
18   the Property beyond the scope contemplated by the provisions set forth above, provided
19   the Receiver first obtains the approval from this Court for any actions beyond the scope
20   contemplated herein; and

21           (x)    The Receiver shall continue to maintain the employment of Wayne
22   Morrison, Defendant's Chief Executive Officer, to assist the Receiver in managing the
23   day to day operations of Defendant's business. Mr. Morrison shall report to and take
24   instructions from the Receiver. The Receiver shall have the power to replace or terminate
25   his employment without cause in his reasonable business judgment.

26

1     4.    **SHAREHOLDERS ISSUES**: The Receiver may not make any payments,

2 distributions or transfers directly or indirectly to any shareholders of the Defendant. The

3 Receiver shall not be responsible for or required to prepare any audits or for making any

4 state or federal securities filing which might be required of the Defendant.

5     5.    **NON-INTERFERENCE WITH RECEIVER**: All creditors of the

6 Defendant, all persons or entities with actual knowledge of this Order, including, without

7 limitation, the parties to this action, and the officers, directors, members, principals,

8 affiliates, agents, servants and employees (current or former) of the Defendant, are

9 enjoined from:

10         (a)    Interfering with the Receiver, directly or indirectly, in the

11 management and operation of the Property or business operations of the Defendant;

12         (b)    Interfering with the Receiver, directly or indirectly, in the collection

13 of revenues derived from the Property or the business operations of the Defendant;

14         (c)    Collecting or attempting to collect from the Property or Defendant;

15         (d)    Extending, dispersing, transferring, assigning, selling, conveying,

16 devising, pledging, mortgaging, creating a security interest in or disposing of the whole or

17 any part of the Property without the prior written consent of the Receiver and this Court;

18         (e)    Doing any act which will, or which will tend to, impair, defeat,

19 divert, prevent or prejudice the preservation of the Property (including the revenues or

20 proceeds thereof) or the business operation of the Defendant; and

21         (f)    Doing any act which directly or indirectly interferes in any manner

22 with the discharge of the Receiver's duties under this Order and the operation and

23 management of the Property or the Defendant's business.

24     6.    **TURNOVER**: To the extent they have not done so already, the Defendant

25 and their officers, directors, members, principals, affiliates, agents, servants, employees,

26 contractors and all other persons or entities in possession thereof, including but not limited

to financial institutions, local, city, county, and state governmental agencies, quasi-governmental agencies and utilities, and all other persons with actual or constructive knowledge of this Order and their agents and employees, shall immediately:

(a) Turn over to the Receiver possession of the Property, including the records, books of account, ledgers and all business records for the Defendant, wherever located and in whatever mode maintained (including, without limitation, information contained on computers, as well as all banking records, statements and canceled checks);

(b) Turn over to the Receiver all bank accounts used in connection with the Property and arrange for the Receiver to have sole signature authority over such accounts;

(c) Turn over to the Receiver all documents which constitute or pertain to all licenses, permits, development plans, surveys, reports, or governmental approvals relating to the Property;

(d) Turn over to the Receiver all documents which constitute or pertain to insurance policies, whether currently in effect or lapsed, which relate to the Property;

(e) Turn over to the Receiver all contracts, leases and subleases, royalty agreements, licenses, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to the Property;

(f) Turn over to the Receiver all documents of any kind pertaining to any and all toxic chemicals or hazardous material, if any, ever brought, used and/or remaining in the possession of the Defendant, including, without limitation, all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices;

(g) Turn over to the Receiver all revenues or proceeds derived from the Property; and

(h) Turn over to the Receiver all passwords needed to access all records and files maintained on any computers, servers, or other electronic devices that belong to

the Defendant, or any other computers, servers, or other electronic devices on which information related to the Property is stored.

7. **DISCHARGE**: Immediately upon the liquidation of the Property or sale of the Property or dissolution of the Defendant, the Receiver shall provide notice to this Court, and upon such notice relinquish control of the Property and be discharged from his duties under this Order with the exception of the obligation to submit and obtain approval of the Final Report and Accounting.

8. **RECEIVERSHIP ESTATE:**

(a) Litigation Stay. No person or entity shall file suit against the Receiver, or take other legal action against the Receiver or the Defendant or Property, with the exception of this action, without an order of this Court permitting the suit or action; provided, however, no prior Court order is required to enforce the provisions of this Order or any other order of this Court in this action. In any event, no such suit shall be brought against the Receiver personally, but only against the Receivership Estate.

(b) Limitation of Liability. The Receivership Estate, the Receiver, and its employees, agents, attorneys and all professionals and management companies retained by the Receiver shall have no liability for any obligations, or debts incurred by the parties to this action. The Receiver and his employees, agents, attorneys, and all professionals and management companies retained by the Receiver shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, without prior authority from this Court as stated in Paragraph 8(a) above. In any event, no suit shall be maintained against the Receiver unless the Receiver has acted outside the scope of his authority and committed fraud or gross negligence in the administration of his duties. The Receiver is acting solely in his capacity as a Receiver and the debts of the Receiver are solely the debts of the Receivership Estate.

FENNEMORE CRAIG, P.C.
TUCSON

9725665/019778.0001

(c)    Indemnification of Receiver. The Receiver's liability for any action taken in the course of his duties shall be limited to the Receivership Estate. The Receivership Estate shall indemnify and hold harmless the Receiver, and any affiliate, member, officer or agent of the Receiver from any claims, liability, loss, cost or expense (including reasonable attorneys' fees and costs) arising out of this Receivership, unless the Receiver has acted outside the scope of his authority and committed fraud or gross negligence in the administration of his duties.

9.    **ADDITIONAL DUTIES AND POWERS.**    Defendant agrees not to oppose, impede, obstruct, hinder, delay or otherwise interfere, and will cooperate, with any steps the Receiver takes to operate, manage and sell the Property consistent with the terms of this Order. Defendant shall not have the right to participate in the Receiver's actions and their consent is not necessary. Further, the Receiver shall have the power and authority to file a chapter 7 or 11 bankruptcy petition. Such right to file a chapter 7 or 11 shall be the exclusive right of the Receiver. Defendant hereby grants such exclusive authority and right to the Receiver. Further, to the extent a chapter 7 or 11 petition is filed or an involuntary chapter 7 or 11 is granted, the Defendant agrees that the Receiver (A) shall be the designated representative of the Debtor-in-Possession, (B) shall continue to stay in possession of the Property and shall have the sole right to operate, manage and sell the Property and (C) shall have all the rights and powers of the Debtor-in-Possession, including but not limited to, the right and power to file a Motion to Sell the Property, to negotiate and obtain DIP financing and use of cash collateral with the Plaintiff, and to file a chapter 11 plan within the exclusivity period, among other things. Defendant hereby transfers such rights and powers to the Receiver and agrees not to challenge or oppose the actions of the Receiver in the chapter 7 or 11 case. In addition, Defendant agrees and acknowledges that (1) Plaintiff would not otherwise agree to advance any more funds to

1    the Receiver or a debtor in possession or to continue to allow the use of its cash collateral

2    or its Property without the protections of this provision and this Order; (2) there is no

3    value in the Property for equity holders or unsecured creditors; (3) Defendant has no

4    other source of funds and no ability to continue to operate and manage the Property

5    without the advance of more funds from Plaintiff; and (4) all of its assets are encumbered

6    to Plaintiff.

7          10.    **CONTACTING THE RECEIVER**: Individuals or entities interested in the

8    Property, including but without limitation, all lessors, lessees, customers, principals,

9    investors, suppliers, and creditors, may contact the Receiver directly by and through the

10   following individual: Christopher G. Linscott, Keegan, Linscott & Kenon, PC, 33 N.

11   Stone Avenue, Suite 1100, Tucson, Arizona 85710, (520) 884-0176,

12   clinscott@klkcpa.com. . Notice by email shall be sufficient for service of process of any

13   documents or pleadings filed by the Receiver.

14         11.    **NOTICE TO THE PARTIES**: Mailing copies of pleadings, reports, and

15   motions filed by the Receiver, Plaintiff, and/or Defendant in this action shall constitute

16   valid service on all parties for notice purposes.

17         12.    **ADDITIONAL DUTIES**. The Plaintiff, Defendant, or Receiver may at any

18   time apply to this Court for any further or other instructions and powers necessary to

19   enable the Receiver to perform his duties properly.

20         DATED this _18th_ day of November, 2014

21

22

23                          D. Douglas Metcalf

24                        Pima County Superior Court Judge

25

26

1    Stipulated and agreed as to form and substance:

2    FENNEMORE CRAIG, P.C.

3    By: _Nancy J. March_____
     Cathy L. Reece
4    Nancy March
     Attorneys for Nedbank Limited
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Exhibit C

ARIZONA SUPERIOR COURT, PIMA COUNTY

| | |
|---|---|
| HON. D. DOUGLAS METCALF | CASE NO.   C20146008 |

| | |
|---|---|
| COURT REPORTER:   Carol Trejo<br>Courtroom - 583 | DATE:         April 27, 2015 |

| | |
|---|---|
| NEDBANK LIMITED<br>    Plaintiff | Nancy J March, Esq. and Cathy L. Reece, Esq.<br>counsel for Plaintiff |

VS.

NORD RESOURCES CORPORATION
    Defendant
***

| | |
|---|---|
| ROYAL CRESCENT VALLEY, INC,<br>    Real Party in Interest | Jordan A Kroop, Esq., appearing telephonically,<br>counsel for Royal Crescent Valley, Inc |
| CHRISTOPHER G LINSCOTT<br>    Receiver | Michael W. McGrath, Esq. counsel for<br>Christopher G Linscott |
| EMPIRE SOUTHWEST, LLC,<br>BERNARD SKAGGS<br>    Intervenors | James B. Reed, Esq., appearing telephonically,<br>counsel for Empire Southwest, LLC |

## M I N U T E   E N T R Y

**MOTION TO APPROVE SALE OF RECEIVERSHIP PROPERTY**

Receiver, Christopher G. Linscott, is present.

Elizabeth S. Fella, Esq. and Marian C. Lalonde, Esq., counsel for prospective purchaser Mars Resources, LLC. (formerly known as PSONS), are present.

Alexander M. Hecker, Esq., counsel for William Peoples, *et al*. Real Parties in Interest, shareholders of NORD Resources Corporation, is present.

Kevin M. Sherlock, Esq., counsel for Farwest Pump Company, is present.

Mr. McGrath submits the motion to the Court.

Mr. McGrath provides the Court with a copy of Notice of Consent of NORD Resources Corporation to Entry of Order Appointing Receiver filed on November 19, 2014.

Ms. Reece indicates NedBank will consent to the sale should the parties agree to the amended asset purchase agreement as stated on the record.

Receiver's Exhibit A, being a copy of Asset Purchase Agreement, is identified.

Collin Webster<br>
Deputy Clerk

Mr. Hecker argues in response to Mr. McGrath's statements.

Ms. Reece argues to the Court in response to Mr. Hecker's statements.

Ms. Fella argues to the Court.

Upon inquiry of the Court, Mr. Reed and Mr. Sherlock state no position to the motion.

Mr. Kroop argues to the Court.

Based upon the debt against the property in the approximate amount of $60 million and the Court's belief that it is unlikely a buyer can be found that would save any of the equity of the shareholders,

IT IS ORDERED that the objection of the Real Parties in Interest to the Motion to Approve Sale of Receivership Property is overruled.

Further, the Court takes Mr. Linscott at his word that he will sell the property in good faith and has found a buyer that sets the fair market value of the property.

The Court will not enter an order today approving the sale of the property; however, anticipates that the parties will submit to the Court a proposed form of order approved and signed by NedBank, Mars Resources LLC, and Receiver, by May 1, 2015.

IT IS ORDERED that the status conference set on May 4, 2015, at 1:30 PM, in Division 16, is AFFIRMED.

The Court directs Mr. McGrath to provide Mr. Kroop through email with a copy of the final proposed form of order. Mr. Kroop need not sign the final proposed order; however, Mr. Kroop is directed to provide a statement of approval to Mr. McGrath.

cc:      Hon. D. Douglas Metcalf
         Alexander M Hecker, Esq.
         Cathy L. Reece, Esq.
         Elizabeth S. Fella, Esq.
         James B. Reed, Esq.
         Jordan A Kroop, Esq.
         Kevin M. Sherlock, Esq.
         Marian C Lalonde, Esq.
         Michael W. McGrath, Esq.
         Nancy J March, Esq.

                                                        _____
                                                             Collin Webster
                                                             Deputy Clerk

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

15 APR 29 PM 5: 01

J. WHITNELL, DEPUTY

**ARIZONA SUPERIOR COURT**

**PIMA COUNTY**

| | |
|---|---|
| NEDBANK LIMITED, | No. C2014 6008 |
| Plaintiff, | |
| vs. | **ORDER APPROVING SALE OF DEBTORS' ASSETS** |
| NORD RESOURCES CORPORATION, | |
| Defendant. | Hon. D. Douglas Metcalf |
| EMPIRE SOUTHWEST, LLC; BERNARD SKAGGS, | |
| Intervenor, | |
| ROYAL CRESCENT VALLEY, INC., | |
| Real Party in Interest. | |

Pending before the Court is the "Motion to Approve Sale of Receivership Property" ("Sale Motion") filed by Christopher G. Linscott ("Receiver") on April 20, 2015. With respect to the Sale Motion, the Court finds and concludes as follows:

QB\155565.00002\34829015.4

1.     The Receiver was appointed at the request of Nedbank Limited ("Nedbank") with the consent of Nord as evidenced by the "Notice of Consent of Nord Resources Corporation to Entry of Order Appointing Receiver" filed November 19, 2014, to be receiver of the assets of Nord Resources Corporation ("Nord") pursuant to the Court's November 18, 2014 Order Appointing Receiver ("Receivership Order").  Among other things, the Receivership Order provided the Receiver with authority to market and sell the property of the receivership estate, comprising substantially all Nord's assets (the "Assets").

2.     On or around December 1, 2014, the Receiver initiated a process by which the Assets would be sold (the "Sales Process"), with the approval of both Nord and Nedbank. Nedbank had previously investigated the sale of the Assets for months.

3.     As part of the Sales Process, the Receiver identified approximately twenty potential purchasers of the Assets, circulated to each potential purchaser a sales memorandum containing information relevant to Nord as an on-going business, and contacted each potential purchaser in late December 2014 and early January 2015 regarding the Sales Process to determine, among other things, its financial ability to purchase the Assets.

4.     Beginning January 12, 2015 and continuing through February 6, 2015, with approval of Nord and Nedbank, the Receiver  narrowed the list of potential purchasers from twenty to eight and granted those eight potential purchasers permission to visit Nord's site and access some of Nord's records through a data room to conduct due diligence prior to submitting a proposal to purchase the Assets.

5.     The Receiver ultimately received four letters of intent from potential purchasers on or before the cut-off date set by the Receiver, February 20, 2015.

2

QB\155565.00002\34829015.4

1     6.     On February 27, 2015, after reviewing each letter of intent with Nord and
2   Nedbank, the Receiver selected PSONS Ltd. as the purchaser of the Assets ("PSONS") as
3   offering the highest and best bid for the Assets.

4     7.     On April 10, 2015, the Receiver filed a "Motion to Approve Form of Notice
5   for the Sale of All of the Defendant's Assets", which the Court granted at a hearing on April
6   13, 2015.  At that hearing, the Court set another hearing on the proposed sale of Assets for
7   April 27, 2015.

8     8.     The Receiver filed an "Affidavit of Mailing" on April 15, 2015, identifying
9   the parties to whom the Receiver gave notice of the proposed sale of the Assets via first-
10  class mail or overnight courier.

11    9.     On April 20, 2015, the Receiver filed his "Motion to Approve Sale of
12  Receivership Property" ("Sale Motion").  Among other things, the Sale Motion included a
13  copy of the "Asset Purchase Agreement" between the named buyer, PSONS, Ltd.
14  ("PSONS") (now acting through its successor-in-interest, MARS Resources LLC
15  ("MARS")) and the Receiver.  An outdated draft of the "Asset Purchase Agreement" was
16  submitted to the Court as Exhibit "A" at a hearing on the Sale Motion on April 27, 2015.
17  After the hearing, the "Asset Purchase Agreement" was updated to reflect the changes
18  Nedbank requested at such hearing.  As updated post-hearing, the "Asset Purchase
19  Agreement" is hereinafter referred to as the "APA".

20    10.    On April 25, 2015, the Receiver filed his "Affidavit of Christopher C.
21  Linscott" ("Affidavit").

22    11.    Also on April 25, 2015, Nedbank and certain equity shareholders of Nord
23  filed objections to the Sale Motion.

24    12.    At the hearing on the Sale Motion conducted on April 27, 2015, Nedbank's
25  counsel indicated that Nedbank would consent to sale of the Assets if certain changes that
26  

3

QB\155565.00002\34829015.4

1     counsel stated on the record were made to the draft "Asset Purchase Agreement" and/or

2     incorporated into an order granting the Sale Motion. Those changes are reflected in the

3     APA.

4           13.     The Receiver has provided a copy of this form of Order to Royal Crescent

5     Valley Inc., who approves this proposed form of Order.

6          Based on the foregoing, the pleadings filed in this matter, the arguments of the

7     parties, and the hearing conducted in this matter on April 27, 2015, the Court finds that

8     consummation of the APA is a prudent exercise of the Receiver's judgment, that APA

9     represents the highest and best sale price and terms for the Assets, that no additional notice

10     is required, and that the terms of the sale are appropriate. Therefore,

11         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

12           A.      The objections of certain equity shareholders of Nord is overruled;

13           B.      The Sale Motion is granted;

14           C.      The APA is approved in its entirety;

15           D.      The Receiver is authorized to consummate the APA and is authorized

16     and instructed to comply with its terms and to make disbursements consented to by

17     Nedbank, including those due to Nedbank and the $74,799.10 owed to the Arizona

18     Department of Environmental Quality, at closing;

19           E.      Neither MARS nor PSONS shall, or shall be construed to, have or incur

20     any responsibility or liability from any party or third-party having actual notice of the Sale

21     Transaction or included on any Affidavit of Mailing filed by the Receiver (collectively, the

22     "Notice Parties"), for the operation, maintenance, or protection of the Property prior to the

23     closing of the sale contemplated by the APA;

24           F.      Notwithstanding anything in the APA or this Order to the contrary,

25     MARS shall be bound by the terms of the "Royalty Deed and Assignment of Royalty,"

26

4

QB\155565.00002\34829015.4

1    recorded with the Cochise County Recorder's Office on June 19, 2009, at No. 2009-14847

2    and the "Grant of Production Payment" recorded with the Cochise County Recorder's Office

3    on June 10, 1999 at No. 1999-18419 as modified by that certain "Assignment of Production

4    Payment" between Arimetco, Inc. and Styx Partners, L.P. (collectively, the "Royalty

5    Agreements") beginning on the closing date of the sale contemplated by the APA, but shall

6    not be liable for any obligations incurred under the Royalty Agreements prior to that time.

7    In addition, the Receiver and receivership estate shall not be required to make or be liable

8    for making any payments on obligations incurred under the Royalty Agreements prior to

9    entry of the Receivership Order or incurred between entry of the Receivership Order and

10    prior to closing of the Sale Transaction;

11         G.    Neither the Defendants, the Receiver, nor the receivership estate shall,

12    or shall be construed to, incur any responsibility or liability from any Notice Party for the

13    operation, maintenance, or protection of the Property after the closing of the sale

14    contemplated by the APA;

15         H.    The Receiver, MARS, and/or any Notice Party, as applicable, are

16    authorized to execute any documents necessary to effectuate the Sale Transaction and

17    assignment and assumption of the Royalty Agreements, subject to the terms and conditions

18    stated in the APA and this order;

19         I.    All applicable appeal periods are waived, any stay of enforcement of

20    the Order under any other applicable rule is waived, and this order constitutes a final order

21    of the Court; and

22         J.    Any title company and/or title insurers that were engaged in

23    connection with the APA are authorized to take all appropriate action to consummate the

24    sale contemplated by the APA, including the recording of documents and the disbursement

25    of funds, subject to the terms and conditions stated in the APA.

26

5

QB\155565.00002\34829015.4

K.     The Court expressly determines that there is no just reason for delay and expressly directs the entry of this Order as a final judgment pursuant to Rule 54(b), Arizona Rules of Civil Procedure.

SO ORDERED this 29th day of April, 2015.

_D. Douglas Mitchell_
JUDGE OF THE SUPERIOR COURT

Form and content approved by
Royal Crescent Valley, Inc.,
through its counsel, and:

_Nancy J. March_
Cathy Reece
Nancy March
FENNEMORE CRAIG, P.C.
for NEDBANK LIMITED

_Michael McGrath_
Michael McGrath
Kristen Wendler
MESCH CLARK & ROTHSCHILD, P.C.
for RECEIVER CHRISTOPHER LINSCOTT

_Elizabeth Fella_
Elizabeth Fella
Marian LaLonde
QUARLES & BRADY LLP
for MARS RESOURCES LLC

6

QB\155565.00002\34829015.4